April 7, 2008

Mr. Kenneth Magidson
Harris County District Attorney
1201 Franklin Street, Suite 600
Houston, Texas 77002

Opinion No. GA-0613

Re: Authority of the Harris County Commissioners Court to lease or purchase a juvenile detention center in Colorado County and to use funds forfeited to the district attorney to pay for the transaction (RQ-0631-GA)

Dear Mr. Magidson:

Your predecessor in office asked whether the Harris County Commissioner's Court may lease or purchase a juvenile detention facility located in Colorado County, Texas.[1] He also asked whether the Harris County District Attorney's asset forfeiture funds may be used to purchase or lease such a facility. Request Letter, *supra* note 1, at 1.

Proceedings against a child under the Juvenile Justice Code may result in placing the child on probation outside of his home in "a suitable public or private residential treatment facility licensed by a state governmental entity or exempted from licensure by state law," excluding a facility operated by the Texas Youth Commission. *See* TEX. FAM. CODE ANN. tit. 3 (Vernon 2002 & Supp. 2007) (Juvenile Justice Code); *id.* § 54.04(c), (d)(1)(B)(ii) (Vernon Supp. 2007) (disposition and placement on probation outside the home).[2] The brief that accompanied the opinion request indicates that there is a shortage of residential treatment facilities in Harris County for all juvenile offenders who are subject to such placement[3] and proposed that asset forfeiture funds held by the

---

[1]Letter from Charles A. Rosenthal, Jr., former Harris County District Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Sept. 21, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*See also* Brief from Charles A. Rosenthal, Jr., former Harris County District Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Sept. 21, 2007) (on file with the Opinion Committee) (attachment to Request Letter, *supra* note 1) [hereinafter Brief].

[3]The brief notes that the repeal of Family Code subsections 54.04(s) and (t) took away the district court's authority to send recidivist misdemeanor offenders to the Texas Youth Commission. *See id.* at 2; *see also* Act of May 24, 2001, 77th Leg., R.S., ch. 1297, § 23, 2001 Tex. Gen. Laws 3142, 3152–53 (formerly codified as Family Code section 54.04(s) and (t), *repealed by* Act of May 25, 2007, 80th Leg., R.S., ch. 263, § 64, 2007 Tex. Gen. Laws 421, 445
(continued...)

Harris County District Attorney be used to assist the county in leasing or purchasing a juvenile detention facility. *See* Brief, *supra* note 2, at 2. In connection with this proposal the following question is asked: "Does the Harris County Commissioners Court have the authority to lease or purchase a juvenile detention facility in Colorado County, Texas?" Request Letter, *supra* note 1, at 1.

It is well established that commissioners courts "can exercise only such powers as the Constitution itself or the statutes have 'specifically conferred upon them.'" *Canales v. Laughlin,* 214 S.W.2d 451, 453 (Tex. 1948) (quoting *Mills County v. Lampasas County,* 40 S.W. 403, 404 (Tex. 1897)). Implied powers of the commissioners court must necessarily flow from some express grant of authority. *See id.*; *see also* Tex. Att'y Gen. Op. No. GA-0154 (2004) at 3–4. A commissioners court has broad discretion in exercising powers that are expressly conferred upon it. *See Canales,* 214 S.W.2d at 453.

Human Resources Code chapter 63 authorizes a county or a combination of counties to establish and operate juvenile detention facilities. *See* TEX. HUM. RES. CODE ANN. § 63.002 (Vernon 2001). A "[f]acility" within chapter 63 is "a residential facility for the placement of juveniles for periods up to one year in length." *Id.* § 63.001(2). Where a single county establishes a facility, the commissioners court of that county may acquire real property for the facility "through gift, purchase, condemnation, or any other method." *Id.* § 63.017(a). The real property may be acquired outside the boundaries of the creating county if, in the opinion of the county's commissioners court, "there will exist a demand for the services to be provided by the facility in the county in which the facility is to be located in addition to any need which may already exist within the boundaries of the creating county." *Id.*; *see id.* § 63.017(b) (board of trustees shall establish rules and regulations for the admission of juveniles into the facility from a county other than county that created the facility). Real property is defined as "land, and generally whatever is erected or growing upon or affixed to land." *San Antonio Area Found. v. Lang,* 35 S.W.3d 636, 640 (Tex. 2000) (quoting *Chastain v. Koonce,* 700 S.W.2d 579, 584 (Tex. 1985) (Gonzalez, J., concurring)).

Section 63.017(a) provides the answer to the first question. Pursuant to this provision, the Harris County Commissioners Court may acquire real property in another county, including a building constructed thereon, to locate a juvenile detention facility, if in its opinion there will be a demand in the other county for the services to be provided by the facility in addition to the demand existing in Harris County. *See* TEX. HUM. RES. CODE ANN. § 63.017(a) (Vernon 2001).

While section 63.017(a) does not expressly authorize a county to acquire real property in another county by lease, it does authorize the commissioners court to "acquire, through gift,

---

[3](...continued)
(effective June 8, 2007)). As a result, the number of referrals to the Texas Youth Commission has diminished, and an increased number of juvenile offenders must be placed in other facilities outside of their homes. *See* Brief, *supra* note 2, at 2.

purchase, condemnation, or *any other method*, real property" in another county for a juvenile detention facility. *See id.* (emphasis added). A prior opinion of this office construed statutory language authorizing a commissioners court to "purchase, construct, . . . or otherwise acquire" buildings as authorizing a county to acquire a building by leasing it. *See* Tex. Att'y Gen. Op. No. MW-357 (1981) at 4 (construing former article 2730b, section 1, Revised Civil Statutes,[4] *adopted by* Act of May 19, 1977, 65th Leg., R.S., ch. 634, § 1, 1977 Tex. Gen. Laws 1619). We conclude that the Harris County Commissioners Court has implied authority to lease real property for a juvenile detention facility located in another county under its section 63.017(a) authority to "acquire, through gift, purchase, condemnation, or any other method, real property" in another county for that purpose, subject to the conditions stated in section 63.017(a). TEX. HUM. RES. CODE ANN. § 63.017(a) (Vernon 2001); *see Canales,* 214 S.W.2d at 453 (implied powers of the commissioners court flow from an express grant of authority).

Two prior opinions of this office determined that a county could not lease real estate for county offices or for an airport absent express statutory authority. *See* Tex. Att'y Gen. Op. Nos. M-1166 (1972) (county has no statutory authority to lease space outside the county seat to provide a branch county office),[5] O-4972 (1942) (former article 1269h, Revised Civil Statutes,[6] did not expressly authorize county to lease real estate for airport). The statutes at issue in Attorney General Opinions O-4972 and M-1166, unlike Human Resources Code section 63.017(a), did not authorize counties to acquire real property "through gift, purchase, condemnation, or *any other method.*" TEX. HUM. RES. CODE ANN. § 63.017(a) (Vernon 2001) (emphasis added). Accordingly, the reasoning of these opinions is not relevant to the construction of Human Resources Code section 63.017(a).

It was also asked whether "the Harris County District Attorney's expenditure of asset forfeiture funds to purchase or lease a juvenile detention facility constitute[s] use of those funds in furtherance of an 'official purpose of his office' under article 59.06(c)(1) of the Code of Criminal Procedure[?]" Request Letter, *supra* note 1, at 1.

Chapter 59 of the Code of Criminal Procedure relates to the forfeiture of "contraband," defined as property used in the commission of certain criminal offenses. *See* TEX. CODE CRIM. PROC. ANN. ch. 59 (Vernon 2006 & Supp. 2007); *id.* art. 59.01(2) (Vernon Supp. 2007). Forfeited property is in general "administered by the attorney representing the state, acting as the agent of the state, in accordance with accepted accounting practices and with the provisions of any local

---

[4]This provision was codified as Local Government Code section 292.001 in 1987. *See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 1072. An amendment adopted in 2001 expressly authorized the commissioners court to "purchase, construct, or provide [buildings] by other means, including a lease or a lease with an option to purchase." Act of May 27, 2001, 77th Leg., R.S., ch. 1409, § 6, 2001 Tex. Gen. Laws 3619, 3629.

[5]Attorney General Opinion M-1166 (1972) discussed former articles 1605 and 1605a-3 of the Revised Civil Statutes. *See* Act of Mar. 4, 1953, 53d Leg., R.S., ch. 39, § 1, 1953 Tex. Gen. Laws 49 (article 1605), Act of Apr. 12, 1961, 57th Leg., R.S., ch. 76, 1961 Tex. Gen. Laws 149 (article 1605a-3).

[6]Act of April 14, 1941, 47th Leg., R.S., ch. 142, 1941 Tex. Gen. Laws 196, 196–98 (authorizing a city or county to acquire land for an airport by gift, dedication, purchase or condemnation).

agreement entered into between the attorney representing the state and law enforcement agencies." *Id.* art. 59.06(a) (Vernon Supp. 2007). The Harris County District Attorney is an attorney representing the state within this provision. *See id.* art. 59.01(1) (the prosecutor with felony jurisdiction in the county where a forfeiture proceeding is held is an "[a]ttorney representing the state"); *see also* TEX. GOV'T CODE ANN. § 43.180(b) (Vernon 2004) (Harris County District Attorney shall represent the state in criminal cases pending in the district and inferior courts of the county). Code of Criminal Procedure article 59.06, which provides for the disposition of forfeited property, includes the following provision:

> (c) If a local agreement exists between the attorney representing the state and law enforcement agencies, all money, securities, negotiable instruments, stocks or bonds, or things of value, or proceeds from the sale of those items, shall be deposited, after the deduction of court costs to which a district court clerk is entitled under Article 59.05(f), according to the terms of the agreement into one or more of the following funds:
>
> (1) a special fund in the county treasury for the benefit of the office of the attorney representing the state, *to be used by the attorney solely for the official purposes of his office* . . . .

TEX. CODE CRIM. PROC. ANN. art. 59.06(c)(1) (Vernon Supp. 2007) (emphasis added); *see also id.* art. 59.06(c)(2)–(4) (forfeitures placed in other funds to be used solely for law enforcement purposes).

Article 59.06 controls and limits expenditures from the special fund. An attorney who represents the state may spend proceeds awarded to him under chapter 59 after a detailed budget listing and defining the categories of expenditures has been submitted to the commissioners court. *See id.* art. 59.06(d). Expenditures are subject to audit by the commissioners court. *See id.* art. 59.06(d), (g). "As a specific exception to Subdivisions (1)–(3) of Subsection (c)," an attorney representing the state may use proceeds received under this chapter to contract with a person or entity to prepare the required audit. *Id.* art. 59.06(m). *See also id.* art. 59.06(h) ("specific exception" permitting the use of no more than ten percent of the district attorney's special fund for nonprofit drug prevention programs, certain drug and alcohol rehabilitation or prevention programs, and "nonprofit chemical dependency treatment facilities licensed under Chapter 464, Health and Safety Code").

The question before us is whether purchasing or leasing a juvenile detention facility would be an "official purpose[]" of the Harris County District Attorney's office within article 59.06(c)(1) of the Code of Criminal Procedure.[7] When construing article 59.06(c)(1), our primary objective is

_____

[7]The actual question was whether the purchase or lease of a juvenile detention facility would "constitute use of those funds in furtherance of an 'official purpose of his office,'" but we have rephrased the question to track the
(continued...)

to ascertain and give effect to the Legislature's intent as expressed by the plain and common meaning of the statute's words. *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007); *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). In this statute, the Legislature used the word "solely," which means "exclusively." *See* XV OXFORD ENGLISH DICTIONARY 961 (2nd ed. 1989) (defining "solely" to mean "only, merely, exclusively"); Tex. Att'y Gen. Op. No. H-943 (1977) at 2 (citing *Helvering v. Sw. Consol. Corp.*, 315 U.S. 194, 198 (1942), and *Stockton Harbor Indus. Co. v. Comm'r of Internal Revenue*, 216 F.2d 638, 645 (9th Cir. 1954), *cert. denied*, 349 U.S. 904 (1955)). The Legislature thus showed its intent to limit the use of article 59.06(c)(1) asset forfeiture funds to the "official purposes" of the district attorney's office.

We next address the brief's arguments in favor of using the special fund to acquire a juvenile detention facility. It proposes a broad construction of "official purposes of his office" in article 59.06(c)(1), based in part on language in *New Amsterdam Casualty Co. v. First National Bank. See New Amsterdam Cas. Co. v. First Nat'l Bank*, 134 S.W.2d 470 (Tex. Civ. App.—El Paso 1939, writ dism'd judgm't cor.). The court in *New Amsterdam* uses the term "official purposes" in discussing a county tax collector's misapplication of county tax funds to his personal debts. Brief, *supra* note 2, at 5. C. W. Owen, the Upshur County Tax Collector, withdrew county funds from the county's depository bank, applying a portion to payment of a note he owed the bank and depositing the balance in his private account. *See New Amsterdam Cas. Co.*, 134 S.W.2d at 473. "This money was drawn out of his private account by him by means of checks given for other than official purposes. In any event, the evidence fails to show that any of the money went to the payment of expenses of his office." *Id.* The evidence in fact tended to very strongly show that the county money "was used for purely private obligations of Owen." *Id.*

The brief points out the contrast in *New Amsterdam* between the "official purposes" of the tax collector's office and the "purely private obligations" for which the tax collector used county funds, suggesting that the phrase "official purposes" should be read broadly, to include any expenditure except expenditures for a private purpose. Brief, *supra* note 2, at 6. *New Amsterdam* does not support a broad reading of the term "official purposes." The court did not need to address the meaning of "official purposes" because the tax collector's use of county funds for personal obligations was so clearly not for an official purpose. Moreover, the *New Amsterdam* court uses the term "expenses of his office" interchangeably with expenses for "official purposes," thus indicating that "official purposes" refers to the duties and functions of the office, rather than any purpose short of a private purpose. *See New Amsterdam Cas. Co.*, 134 S.W.2d at 473.

The brief also suggests that dicta in *Margraves v. State* supports a broad reading of "official purposes." *See* Brief, *supra* note 2, at 6 (citing *Margraves v. State*, 34 S.W.3d 912 (Tex. Crim. App. 2000)). *Margraves* dealt with a misapplication of state property under former Penal Code section

---

[7](...continued)
language of article 59.06(c)(1), which states that the forfeiture proceeds allocated to the district attorney may "be used by the attorney *solely for the official purposes of his office*." TEX. CODE CRIM. PROC. ANN. art. 59.06(c)(1) (Vernon Supp. 2007) (emphasis added); *see* Request Letter, *supra* note 1, at 1.

39.01, involving a university regent's travel on a state plane for largely personal reasons. *See Margraves*, 34 S.W.3d at 914 (citing former Penal Code section 39.01, *as adopted by* Act of May 28, 1983, 68th Leg., R.S., ch. 558, § 7, 1983 Tex. Gen. Laws 3237, 3241–42). In response to appellant's argument that the state must prove that he had conducted no state business on the trip, the court observed in dicta that "[a] public servant can misapply government property even when it is used for official purposes." *Id.* at 916; *see* Brief, *supra* note 2, at 6. Categorical statements of a court should be read in context. *See generally Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 413 (Tex. 1997) (Hecht, J. concurring). The *Margraves* court made this statement in discussing the meaning of "misapply," and it was not defining "official purposes" or dealing with a statute like article 59.06(c)(1). *See Margraves*, 34 S.W.3d at 916. Neither *New Amsterdam* nor *Margraves* supports the suggested broad construction of "official purposes."

The brief raises another argument based on Family Code section 51.01. It states that the district attorney is "obliged to serve as an advocate of the State of Texas in pursuing the statutory goals of the Juvenile Justice Code," citing Family Code section 51.01(1), (2)(A), (4), and (5). Brief, *supra* note 2, at 6–7. Section 51.01 provides that

> *This title* shall be construed to effectuate the following public purposes:
>
> (1) to provide for the protection of the public and public safety;
>
> (2) consistent with the protection of the public and public safety:
>
> (A) to promote the concept of punishment for criminal acts;
>
> . . . ;
>
> (4) to protect the welfare of the community and to control the commission of unlawful acts by children;
>
> (5) . . . separating the child from the child's parents only when necessary for the child's welfare or in the interest of public safety . . . .

TEX. FAM. CODE ANN. § 51.01 (Vernon 2002) (emphasis added). It is argued that the expenditure of funds to establish juvenile detention facilities would further these goals. *See* Brief, *supra* note 2, at 7. However, section 51.01 addresses the construction of "[t]his title," that is, title 3 of the Family Code, the "Juvenile Justice Code." *See* TEX. FAM. CODE ANN. chs. 51–60 (Vernon 2002 & Supp. 2007). Article 59.06 of the Code of Criminal Procedure, relating to the use of contraband forfeited to a prosecuting attorney's office, is not a provision of the Juvenile Justice Code. Thus, the rules of construction stated in section 51.01 of the Family Code do not apply to article 59.06, Code of Criminal Procedure.

We address the construction of the language in article 59.06(c)(1) that authorizes the Harris County District Attorney to use funds derived from certain forfeited property "solely for the official purposes of his office." TEX. CODE CRIM. PROC. ANN. art. 59.06(c)(1) (Vernon Supp. 2007). To determine the meaning of words and phrases in statutes, we read them in context. *See* TEX. GOV. CODE ANN. § 311.011(a) (Vernon 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *City of Houston v. Clark*, 197 S.W.3d 314, 318 (Tex. 2006). In this sentence, "official purposes" and "purposes of his office" have the same meaning. *See* BLACK'S LAW DICTIONARY 1114 (7th ed. 2004) ("Official" has been defined as "[o]f or relating to an office or position of trust or authority"). The Legislature thus reiterated the idea that the fund was to be expended only for the purposes of the district attorney's office. *See* TEX. CODE CRIM. PROC. ANN. art. 59.06(c)(1) (Vernon Supp. 2007).

We look to the constitution and statutes to determine the "official purposes" of the district attorney's office. Texas Constitution article V, section 21 provides that "County Attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a District Attorney, the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature." TEX. CONST. art. V, § 21. The Legislature has adopted statutes providing that the Harris County District Attorney "shall represent the state in criminal cases pending in the district and inferior courts of the county" and that he "has all the powers, duties, and privileges in Harris County relating to criminal matters for and in behalf of the state that are conferred on district attorneys in the various counties and districts." TEX. GOV'T CODE ANN. § 43.180(b)–(c) (Vernon 2004). *See also* TEX. CODE CRIM. PROC. ANN. art. 2.01 (Vernon 2005) ("Each district attorney shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely."). He also represents the State in district court proceedings involving children under the Juvenile Justice Code. *See* TEX. FAM. CODE ANN. tit. 3 (Vernon 2002 & Supp. 2007) (Juvenile Justice Code), *id.* §§ 51.02(11) (Vernon Supp. 2007) (district attorney is a prosecuting attorney for purposes of Juvenile Justice Code); 53.04(a) (Vernon 2002) (prosecuting attorney's authority to petition for an adjudication or transfer hearing of a child). It is well established that a district attorney's "primary function, is 'to prosecute the pleas of the state in criminal cases.'" *Meshell v. State*, 739 S.W.2d 246, 254 (Tex. Crim. App. 1987) (quoting *Brady v. Brooks*, 89 S.W. 1052, 1056 (Tex. 1905)).

Statutes on the expenses of the district attorney's office exemplify expenditures for the "official purposes of his office." Government Code section 41.107 provides as follows:

> (a) The commissioners court of the county or counties composing a district may furnish telephone service, typewriters, office furniture, office space, supplies, and *the other items and equipment that are necessary to carry out the official duties of the prosecuting attorney's office* and may pay the expenses incident to the operation of the office.

> (b) The commissioners court of the county or counties composing a district may furnish automobiles for the use of the prosecuting attorney's office in conducting *the official duties of the office* and may provide for the maintenance of the automobiles.

TEX. GOV'T CODE ANN. § 41.107 (Vernon 2004) (emphasis added). *See id.* §§ 41.106 (salaries of assistant prosecuting attorneys, investigators, secretaries, and other office personnel; travel expenses for assistant prosecuting attorneys and investigators); 43.004(b) ("district attorney is entitled to receive from the state the actual and necessary postage . . . and telephone expenses incurred in the discharge of official duties"); *see also* TEX. CODE CRIM. PROC. ANN. art. 59.06(d) (Vernon Supp. 2007) (restrictions on use of an award of forfeited property to increase an employee's salary, expense, or allowance). The kind of expenditures listed in these provisions are "solely for the official purposes of his office." TEX. CODE CRIM. PROC. ANN. art. 59.06(c)(1) (Vernon Supp. 2007). These expenditures enable the district attorney's office to carry out the constitutional and statutory functions that we have outlined.

Moreover, we find no provision expressly authorizing the Harris County District Attorney to provide for a juvenile detention facility. We find only one provision authorizing a district attorney to provide funding for any kind of facility. Article 59.06(h) authorizes, as a "specific exception" to the restriction on using forfeiture funds, the expenditure of less than ten percent of the fund for "nonprofit chemical dependency treatment facilities licensed under Chapter 464, Health and Safety Code." *Id.* art. 59.06(h). Providing a juvenile detention facility is not an official purpose of the Harris County District Attorney's office.

The county's authority to provide buildings for county purposes is vested by statute in the commissioners court, not in the district attorney. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 27–28 (Tex. 2003) (the commissioners court has the contracting authority for the county, unless another statute expressly grants it elsewhere). Local Government Code section 291.001 states that the commissioners court shall provide "a courthouse and offices for county officers at the county seat," and "provide other necessary public buildings." TEX. LOC. GOV'T CODE ANN. § 291.001(1)–(2) (Vernon 2005). *See also* TEX. GOV'T CODE ANN. § 1301.001(a)(2) (Vernon 2005) (commissioners court of a county may issue bonds to purchase sites in the county and to construct buildings thereon for homes or schools for dependent or delinquent children). Accordingly, the Harris County District Attorney may not use asset forfeiture funds to help purchase or lease a juvenile detention facility for the county.

## S U M M A R Y

Pursuant to Human Resources Code section 63.017(a), the Harris County Commissioners Court may purchase or lease a juvenile detention facility in another county. The Harris County District Attorney may not use asset forfeiture funds to help purchase the juvenile detention facility for the county, because providing a juvenile detention facility is not an official purpose of that office under Code of Criminal Procedure article 59.06(c)(1) and is therefore not an authorized use of those funds.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee