## L. E. GRIFFITH ET AL. v. J. H. SAULS.

### No. 6508.

· 1. **Ancient Boundaries — Declarations.** — Willis Avery, who was present and assisting in making a survey, pointed out to several witnesses a corner as made by him or in his presence in 1832, when the original survey was made. On the trial, January, 1888, the witnesses were allowed to testify to the declarations of Avery, and to his pointing out the corner as that of the original survey and made in 1832. It was shown that Avery's physical condition prevented his testifying either by deposition or orally. *Held*, that the testimony to his declarations was competent and was properly admitted.

2. **Judicial Condemnation of Part of a Land Grant.**—In the case of Hamilton v. Avery, 20 Texas, 630, the condemnation of the Avery grant to the extent and because that part in controversy lay without the colony by whose authority the grant was issued had no effect upon that part of the grant within the said colony lines.

3. **Acceptance of Relief in Lieu of Land Lost.**—After the decision in Hamilton v. Avery the Legislature granted land certificates to the grantees losing by said judgment in compensation for such loss. Neither the legislative grant nor the acceptance of its benefits had effect as an estoppel against their holding so much of the original surveys as had not been lost by them.

, APPEAL from Williamson. Tried below before Hon. A. S. Walker.

Appellants L. E. Griffith and J. H. Muckleroy brought this suit in the District Court of Travis County against the appellee J. H. Sauls in trespass to try title to 589 acres of land described in appellants' original petition.

· The appellee Sauls answered by general denial, pleas of not guilty, and statutes of limitations of three and five years.

. By agreement of all parties to the suit a change of venue was had to

the District Court of Williamson County. It was also agreed that this action should apply in every respect to R. B. Hutto, who thus becomes a party defendant to the suit.

On January 26, 1888, the cause was tried by the court without the intervention of a jury and judgment rendered in favor of appellees for the land in controversy, from which judgment appellants, having perfected their appeal, now bring the cause to the Supreme Court.

This suit, among other things, involves the true location of the southern base line of the ten leagues of land granted to Willis Avery and others as colonists of what is commonly known as Austin's Little Colony. The land in controversy all lies south of the north line of the colony.

*West & McGown,* for appellants. — 1. The testimony of Howren and Dalrymple as to facts told them by Avery, the latter being shown to be alive and residing in the county where the trial was had, is hearsay and therefore not admissible. Welder v. Carroll, 29 Texas, 317; Evans v. Hurt, 34 Texas, 111; 49 Texas, 311; Hunnicutt v. Peyton, 12 Otto, 333; Stroud v. Springfield, 28 Texas, 649; Smith v. Russell, 37 Texas, 255.

2. Even though it be asserted that the testimony of Howren and Dalrymple is that character of hearsay testimony that is admissible on the ground of its being statements made to them as to lines by parties who were present when the original survey was made, still in this case the same is incompetent because of the failure on the part of the party attempting its use to show to the court the necessary proper predicate as to condition of person, place, time, and circumstance.

3. In order to determine properly where in fact the south boundary line of the Avery and the other colony leagues is upon the ground recourse should be had first to natural objects called for by the original surveyor in his field notes, and the line as run out by adhering to such natural calls will be the true southern boundary sought. Shaeffer v. Berry, 62 Texas, 705; Davis v. Smith, 61 Texas, 23; Phillips v. Ayres, 45 Texas, 606; Stafford v. King, 30 Texas, 257; Booth v. Upshur, 26 Texas, 64; Hobby's Land Law, sec. 315, *et seq.*

4. The court erred in finding that the Legislature of Texas by special act approved February 16, 1858, granted to Avery, Ebberly, and others one league each in lieu of lands lost by decision of the Supreme Court in Hamilton v. Avery, 20 Texas, because said act was for the relief of all, while only Avery was involved in said case, the fact being, as shown by the evidence on the trial, that said leagues were granted in lieu of all lands the title to which had not been cured by the act of confirmation of 1854 or in lieu of all lands held by them as colonists of Austin's Little Colony.

5. The court erred in its ninth finding of fact, in holding that the cases against the colonial titles of Avery, Ebberly, etc. (of which Hamilton v. Avery is one), resulted in holding invalid only the land in said

grants north and east of the dividing line between the Colorado and the Brazos rivers; and that by the same litigation that part south and west of the divide was recognized as having passed valid titles of grants.

6. Avery and Ebberly's heirs having petitioned for and obtained from the Legislature new grants of land of the same quantity as that to which they were originally entitled and in lieu of the same, and having accepted such grants, they and their vendees are estopped from asserting title to the lands originally granted when the State patented these lands to other parties. Dikes v. Miller, 24 Texas, 424; Sideck v. Duran, 67 Texas, 261, and cases cited; Mayer v. Ramsey, 46 Texas, 371; 3 Washb. on Real Prop., 4 ed., 61, *et seq.*

*A. S. Fisher*, for appellee, controverted the propositions made by appellants and cited Hamilton v. Avery, 20 Texas, 630; Hanrick v. Jackson, 55 Texas, 17; Hancock v. McKinney, 7 Texas, 381; Sideck v. Duran, 67 Texas, 260; Dikes v. Miller, 24 Texas, 417; Hanrick v. Dodd, 62 Texas, 90.

ACKER, Presiding Judge. — L. E. Griffith and J. H. Muckleroy brought this suit against J. H. Sauls in trespass to try title to 589 acres of land out of the McDougle and the Isaac Lindsey surveys, both patented January 26, 1847.

The defendant answered by general denial, not guilty, and the three and five years statutes of limitation. The trial without a jury resulted in judgment in favor of defendant for the land, from which plaintiffs appealed.

The parties entered into the following agreement:

"1. That plaintiffs' chain of title is perfect, and that they hold under the John McDougle survey, patented January 26, 1847, and the Isaac Lindsey survey, patented January 26, 1847.

"2. That defendant's chain of title is perfect, and that he holds under the grants of Jacob Ebberly and Willis Avery, titled November 7 and November 13, 1832, respectively.

"3. It is expressly understood that it devolves on each party respectively to show that the land in controversy is embraced within the limits of the respective grants under which each party holds."

This agreement eliminated the question of title and converted the suit into an action to establish the boundary between the grants under which the plaintiffs held and the grants under which the defendant holds.

The Avery and Ebberly surveys were located and surveyed by Bart Simms in 1832 as parts of Austin's Little Colony, the north boundary of which was the dividing ridge between the Colorado and Brazos rivers. Much of these surveys, however, was in fact north of the dividing ridge between the rivers and not within the colony.

The surveys under which the plaintiffs hold are south of and adjoining

the Avery and Ebberly surveys, which extend north of Brushy Creek, a tributary of the Brazos River.

The first assignment of error is: "The court erred in permitting the witnesses Howren and Dalrymple to testify as to conversations had with and matters stated by Avery concerning these surveys, said Avery being alive and in Williamson County, as is shown in plaintiffs' bill of exception No. 1."

The testimony objected to was as follows: Howren testified: "When I made the survey in August, 1885, I proceeded to a point on Brushy Creek shown me by Avery, accompanied by Willis Avery, to make a start to survey the eastern boundary line of the Willis Avery league. I had proceeded on this line running south 10 degrees west in the bottom of Brushy Creek, when I came across some marks or hacks on large trees in the course I was then running. Avery told me these were the identical marks and hacks that had been made in the original survey of Bart Simms; and he further told me that he recognized them as such. When we reached the distance of about 2700 varas from the point we commenced on the creek Avery told me that his corner was at a point he showed me in the prairie."

Dalrymple testified: "In about 1873, when I made the survey of the Avery east line, I started at a point on the creek at which there then stood an ash tree. Avery told me that there were formerly on the ash tree marks thus, XXVII, and told me that they were made by Simms or his chainmen at the time the survey was originally made."

The foregoing testimony was objected to on the following grounds:

1. It was incompetent.

2. It was hearsay, being statements made to the witnesses by Avery and not facts within the knowledge of the witnesses.

3. Because the same was contradictory and not in accordance with the testimony of Willis Avery as already given in evidence.

The trial judge made the following endorsement on the bill of exceptions: "It was shown that Avery's physical condition is such that his deposition can not be taken, nor can he testify orally upon the stand, it being shown that in October last an officer visited him to take his deposition and could not, and that a few days ago he was in the same condition. He is very old, and has lost the power of speech."

The contention being as to the south boundary line of the Avery and Ebberly leagues, they having a common south line, the statements of a party who was present when the original survey was made and saw the lines run and marked as to where the lines were so run and marked is certainly not incompetent evidence, if such statements are offered under circumstances which make them admissible. If Avery had been dead there can be no question as to the admissibility of his statements about which the witnesses testified, and this would be so because of the inability to produce the witness. If the party whose statements would be admissible if he was dead, from advanced age or other irremediable cause has

lost the power of speech and the ability to testify either orally or by deposition, what good would it do to produce him? In what would he be better than a dead man in so far as the production of his testimony is concerned? We think the circumstances and condition of Avery as shown by the record furnish as satisfactory reason for admitting his statements as proof of his death would afford.

The fact that Avery may have testified at some other time contradictory of his statements made to the witnesses Howren and Dalrymple might affect the credibility of those statements but would not affect their competency.

The second, third, fourth, tenth, and eleventh assignments of error relate to the findings of the court as to the true locality of the south boundary line of the Ebberly and Avery leagues. The locality of this line was a question of fact for the trial court, and without here reciting the evidence we deem it sufficient to say that we think the findings of the court are sustained by the evidence.

The next assignment of error presented is, "The court erred in finding that the Legislature of Texas by special act, approved February 16, 1858, granted to Avery, Ebberly, and others one league each in lieu of lands lost by the decision of the Supreme Court in Hamilton v. Avery, 20 Texas, 630, because said act was for the relief of all, while only Avery was involved in said case, the fact being, as shown by the evidence on the trial, that said leagues were granted in lieu of all lands the title to which had not been cured by the act of confirmation of 1854, or in lieu of all lands held by them as colonists of Austin's Little Colony."

The next assignment, which is presented in connection with the foregoing, the two to be considered together, is, "The court erred in its ninth finding of fact in holding that the cases against the colonial titles of Avery, Ebberly, etc. (of which Hamilton v. Avery is one), resulted in holding invalid only the lands in said grants north and east of the dividing line between the Colorado and the Brazos rivers, and that by the same litigation that part south and west of the divide was recognized as having passed valid titles of grants."

We do not think the court erred in the matters complained of by these assignments. The Avery and Ebberly grants were made in November, 1832, including within their boundaries land lying north and east of the dividing ridge between the Colorado and Brazos rivers, which ridge was the north boundary line of the colony in which alone these grants could be located. Afterwards Hamilton located a certificate on so much of the Avery grant as was north of Brushy Creek and north and east of the north boundary line of the colony. In a suit by Hamilton against Avery it was decided that Avery acquired by the grant no title as to the land beyond the limits of the colony in which he was entitled to acquire land. Hamilton v. Avery, 20 Texas, 630.

In 1854, after trial of the suit of Hamilton v. Avery in the court below, the Legislature passed an act confirming the titles of Avery and Ebberly to their respective grants, but expressly providing that the act should not affect the rights of third parties. In Hamilton v. Avery the expression "third parties" was construed to mean parties who had acquired a right in the land adverse to the colonists' grants.

In 1858 the Legislature passed an act granting to these colonists, Avery, Ebberly, and others, each a certificate for one league of land, but the act does not recite the reason for the grants or on what account they were made. Spec. Laws 1858, 157. The objection to the finding of the court upon the ground that the Act of 1858 was for the relief of all, while Avery alone was a party to the suit by Hamilton, has no force. The Act of 1858 was as much for the benefit of Avery as if he alone had been mentioned in it, and the decision in Hamilton v. Avery determined that these colonists acquired by their grants no title to the land beyond the limits of the colony. Appellants contended that the grant of the certificate to Avery and Ebberly each for one league of land was in lieu of all lands the title to which had not been cured by the act of confirmation of 1854 or in lieu of all lands held by them as colonists of Austin's Little Colony.

It was proved on the trial that the memorial of Avery and other colonists to the Legislature asking for the grant of a league certificate each placed their claim upon the ground that they had been ousted of their grants to lands supposed to have been located in Austin's Little Colony, and that the Act of 1858 was passed in consideration of their loss of land by the decision in Hamilton v. Avery.

We think the evidence sustains the finding that the grant of 1858 of the league certificates was made in compensation for the lands lost by the decision in Hamilton v. Avery, and not in lieu of all lands held by the beneficiaries of that act as colonists of Austin's Little Colony. But if appellants are correct in their contention that the court erred in the findings now under consideration we can not see how they could be benefited thereby, unless the court erred in its findings as to the true locality of the south boundary line of the Avery and Ebberly grants, which we have already decided adversely to appellants, or unless the court erred in its finding that appellee was not in possession or claiming any part of the land described in appellants' petition. Upon this last question we think the evidence abundantly sustains the finding of the court.

The remaining assignments of error contend that the court erred in not finding as a matter of law that Avery and Ebberly by accepting the grant of a certificate for one league of land each under the Act of 1858 thereby abandoned and forfeited their claims and titles to all of the lands included in their grants in the Little Colony.

Having sustained the findings of the court as to the true locality of the south boundary line of these colonial grants, and that no part of the land

sued for by appellants is included therein, the matter complained of by these assignments becomes immaterial, for if the court had held as appellants contend it should have done it could not have benefited them. We think, however, that the court did not err in the particular here complained of.

The effect of the decision in the case of Hamilton v. Avery, *supra*, was that the grants made to the colonists of Austin's Little Colony—Avery, Ebberly, and others—were void as to all land not included within the limits of that colony as defined by the contract of colonization.

The effect of the act of confirmation of 1854 was to validate and make good those grants, except as against third parties who had acquired rights to the land included in those grants.

The certificates granted by the act of 1858 were in compensation for the land lost to the colonists by the decision in Hamilton v. Avery and not restored to them by the act of confirmation of 1854.

The judgment of the court below being in accordance with these conclusions, we are of opinion that it should be affirmed.

*Affirmed.*

Adopted June 17, 1890.